**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA, *ex rel.* RELATOR LLC, a California limited liability company,

Plaintiffs,

v.

DUANE McGLAUFLIN, an individual, DEAN TOMME, an individual, DNT CONSTRUCTION, LLC, a Texas limited liability company, and DOES 1-10,

Defendants.

Case No. 1:24-cv-00155-RP

**RELATOR LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. The Paycheck Protection Program ..... 4

B. The False Claims Act ..... 5

C. The Public Disclosure Bar Does Not Apply ..... 6

1. There was no Public Disclosure of "Substantially the Same" Allegations or Transactions Alleged in the Complaint ..... 7

2. Plaintiff is an Original Source ..... 10

D. The Complaint Satisfies Rules 8(a) and 9(b) ..... 11

1. Defendants Falsified the Headcount at DNT ..... 14

2. The Complaint Alleges that DNT is not a Small Business ..... 14

3. The Complaint Alleges that DNT's Certification of Economic Uncertainty was False ..... 15

4. The Complaint Alleges that DNT's Use of Proceeds Certification was False ..... 15

E. The Complaint Adequately Alleges Scienter ..... 16

F. Any Dismissal Should be with Leave to Amend ..... 18

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Procurement, LLC v. Thermcor, Inc.*,
No. 2:15-cv-00015, 2017 WL 9478501 (E.D. Va. Apr. 4, 2017) ....................7

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 383 (5th Cir. 2024) ....................18

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
933 F. Supp. 2d 825 (E.D. Va. 2013) ....................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................12

*United States ex rel. Booker v. Pfizer, Inc.*,
No. 10-cv-11166-DPW, 2014 WL 1271766 (D. Mass. Mar. 26, 2014) ....................11

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*,
560 F.3d 371 (5th Cir. 2009) ....................6

*Burford v. Cargill, Inc.*,
No. 05-cv-0283, 2011 WL 4382124 (W.D. La. Sept. 20, 2011) ....................12, 17

*United States ex rel. Capshaw v. White*,
No. 3:12-CV-4457-N, 2018 WL 6068806 (N.D. Tex. Nov. 20, 2018) ....................17

*United States ex rel. Colquitt v. Abbott Labs.*,
858 F.3d 365 (5th Cir. 2017) ....................7, 8, 12

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ....................12, 17

*Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ....................3

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) ....................18

*United States ex rel. Longhi v. Lithium Power Techs., Inc.*,
575 F.3d 458 (5th Cir. 2009) ....................12

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
133 F. 4th 395 (5th Cir. 2025) ....................17

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
519 F. App'x 890 (5th Cir. 2013) ....................12

*Health Choice All., LLC, on behalf of United States v. Eli Lilly & Co., Inc.*,
No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018)....................10

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
810 F. App'x 237 (5th Cir. 2020) ....................12

*United States ex rel. Relator LLC v. Tennyson*,
2:23-cv-05887-SRM-SSC, Dkt. No. 75 (C.D. Cal. Sep. 29, 2025) ....................9

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) ....................3

*United States ex rel. Schweizer v. Canon, Inc.*,
9 F.4th 269 (5th Cir. 2021) ....................7, 10

*United States ex rel. Solomon v. Lockheed Martin Corp.*,
878 F.3d 139 (5th Cir. 2017) ....................1, 8, 9, 10

*United States ex rel. Sullivan v. Atrium Med. Corp.*,
No. 13-cv-244, 2015 WL 13799759 (W.D. Tex. June 15, 2015) ....................6

*United States v. Vista Hospice Care, Inc.*,
No. 3:07-cv-604-M, 2012 WL 12886423 (N.D. Tex. July 23, 2012)....................17

*Wibracht v. Travelers Cas. & Sur. Co. of Am.*,
731 F. Supp. 3d 761 (E.D. Tex. 2024)....................7

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*,
336 F.3d 375 (5th Cir. 2003) ....................16

**Statutes**

15 U.S.C. § 645....................5

18 U.S.C. § 1001....................5

18 U.S.C. § 1004....................5

18 U.S.C. § 3571....................5

31 U.S.C. §§ 3729 *et seq.*.................... *passim*

31 U.S.C. §3730....................6, 7, 10

**Other Authorities**

13 C.F.R 121.201 .......... 13

("CARES") Act., Pub. L. No. 116-136 .......... 4

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 8(a) .......... 1, 2, 11,12

Fed. R. Civ P. 15 .......... 18

## I. INTRODUCTION

Plaintiff-Relator, Relator LLC ("Plaintiff"), respectfully submits this Memorandum of Points and Authorities in opposition to DNT Construction, LLC ("DNT"), DNT's chief executive officer and Chairman, Duane McGlauflin ("DNT's CEO"), and DNT's President, Dean Tomme's ("DNT's President") (together, the "Defendants") Motion to Dismiss Plaintiff's Complaint. Defendants' Motion must be denied because there has been no public disclosure regarding the specific allegations (the fraudulent nature of the disclosed transaction) made in the Complaint, the Complaint satisfies the requirements of Federal Rules 8(a) and 9(b), and the Complaint adequately alleges that Defendants acted with scienter in applying for and receiving a $8,421,129.00 Government grant.

*First*, the public disclosure bar does not apply to this case because Defendants fail to point to either a single source or a related set of sources that disclose Plaintiff's allegations or the fraudulent nature of the transaction at issue in this case. *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145 (5th Cir. 2017) ("The combination of X and Y must be revealed, from which the readers or listeners may infer Z. . . Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference: a misrepresented state of facts and a true state of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud.") (internal citations and quotations omitted). Using the Fifth Circuit's public disclosure test of X + Y = Z, Defendants boisterously try and convince this Court that X alone equals Z. Of course, X alone does not equal Z. What Defendants do not point to—because they cannot point to it—is the presence of any qualified, single public disclosure of the entire fraudulent transaction: that 1) DNT had over 500 employees and did not face economic uncertainty during the COVID-19 pandemic, and 2) DNT applied for and received

both the PPP First Draw Loan and, subsequently, forgiveness on that PPP First Draw Loan (the fraudulent nature of the transaction). That is, Defendants do not—because they cannot—demonstrate that the Y component of the Fifth Circuit's equation test exists in any of the sources they have identified: that is, that there is any single public disclosure that this transaction may have been fraudulent. Put differently, Defendants cannot point to anything that would have put the Government on notice that this transaction may have been fraudulent.

*Second*, Plaintiff's allegations in the Complaint (i) that DNT's CEO and President knowingly and willfully submitted—or knowingly and willfully caused to be submitted—DNT's fraudulent application for the PPP First Draw Loan, and (ii) that DNT's CEO and President knowingly and willfully submitted—or knowingly and willfully caused to be submitted—DNT's subsequent application for forgiveness on that PPP First Draw Loan more than satisfy Federal Rules 8(a) and 9(b) and the scienter requirements for both DNT and the Individual Defendants. Simply stated, the CEO and President of a company with over $100 million in annual revenue and over 500 employees knew or should have known that they ran a company with over 500 employees, and knew or should have known that companies with over 500 employees were generally excluded from participating in the PPP, and yet submitted the application, received the money DNT was not entitled to and did not need, and subsequently applied for forgiveness on that improperly taken loan, converting the loan into a Government grant.

## II. STATEMENT OF FACTS

This is an FCA action to recover treble damages and civil penalties against Defendants, who defrauded the Small Business Administration ("SBA") in connection with DNT's application for and receipt of $8,421,129 in COVID-19 pandemic-related Paycheck Protection Program

(“PPP”) funding (the “First Draw Loan”) in 2020 and the subsequent forgiveness—in its entirety—of that First Draw Loan on August 9, 2021.

DNT applied for a PPP First Draw Loan in round 1 of the PPP, in April 2020. Dkt. 1, ¶ 50. DNT’s CEO and President submitted the First Draw Loan application, or caused that application to be submitted, despite knowing that DNT was ineligible to participate in the PPP because DNT was not a “small business concern.” Dkt. 1, ¶¶ 5; 51; 72. Defendants also knew that DNT did not meet the economic-necessity standard for obtaining the PPP First Draw loan. Dkt. 1, ¶¶ 5; 6; 12; 55; 59. This application was fraudulent because Defendants knew they were not eligible to participate in the PPP program.

DNT’s PPP First Draw Loan was approved by the Small Business Administration on April 4, 2020, and DNT received the funding shortly thereafter. Dkt. 1, ¶ 50. Later, DNT’s CEO and President knowingly submitted—or caused to be submitted—the PPP First Draw Loan forgiveness application. That application was fraudulent because DNT was never eligible to receive the PPP First Draw Loan in the first place. Dkt. 1, ¶¶ 58–63.

## III. LEGAL STANDARD

In considering a motion to dismiss, a court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiff. *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025). A court must determine whether the complaint contains “sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.” *Id.* (cleaned up). “A pleaded claim is plausible if the allegations in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 116 (5th Cir. 2019) (cleaned up).

## IV. ARGUMENT

### A. The Paycheck Protection Program

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[1] The CARES Act was the Government's initial economic response to the COVID-19 pandemic, and it included the PPP,[2] which authorized up to $349 billion in forgivable loans (known as PPP First Draw Loans) to qualifying small businesses to facilitate job retention and certain other permitted business expenses.[3] These loans were to be underwritten by private banks but were funded and guaranteed by the SBA, which would then forgive (pay off) the loan balances if certain criteria were met. In April 2020, Congress authorized over $300 billion in additional PPP funding.[4] The CARES Act funding for the PPP ended on August 8, 2020. By that time, there were roughly $525 billion in PPP loans made to approximately 5.2 million businesses.

To obtain a PPP First Draw Loan, a qualifying business had to submit a loan application signed by an authorized representative, typically to a private bank which would issue the loan with minimal underwriting, subject to an SBA guarantee, and ultimately funded by the SBA. To qualify for a PPP First Draw Loan, a business had to certify on its application, among other things, that it (i) was "eligible to receive a loan under the rules in effect at the time this application [was] submitted . . ." (ii) faced economic uncertainty due to the COVID-19 pandemic; (iii) would use the PPP First Draw Loan funds to maintain its existing payroll and to cover certain qualified expenses; and (iv) would not seek forgiveness of more than 25% of the loan for non-payroll costs.

[1] Pub. L. No. 116-136, 134 Stat.

[2] Regulations.gov.

[3] SBA Paycheck Protection Program ("PPP") Loan Forgiveness: In Brief, *available at*, R46397.pdf.

[4] *Id.*

PPP applicants also acknowledged that false certifications on their applications would violate federal law and be punishable by imprisonment and civil fines, including violations of: (i) 18 U.S.C. §§ 1001, 1004, 3571; (ii) 15 U.S.C. § 645; and (iii) the FCA, 31 U.S.C. §§ 3729 *et seq*.

**B. The False Claims Act**

The False Claims Act ("FCA") has been the Government's primary fraud fighting tool since the Civil War era and provides the Government with its main means of recovery for frauds against the public fisc. *Qui tam* provisions encourage private citizens with information about fraud (known as "relators") to sue on the Government's behalf. The FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The Government has used the FCA to combat fraud in connection with PPP loans.[5]

The FCA provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), is liable to the United States for civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

- "Knowingly" is defined to mean "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the

[5] The first FCA settlement involving PPP loans was announced on September 13, 2022. The Government press release is available here: Southern District of Texas | First-ever False Claims Act settlement received from Paycheck Protection Program lender | United States Department of Justice.

information." 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

- "Claim" is defined in the statute to mean "any request or demand, whether under a contract or otherwise, for money or property" which is "presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A). Alternatively, it is "any request or demand, whether under a contract or otherwise, for money or property" which is "made to a contractor, grantee, or other recipient" of federal funds, if the money is spent on behalf of the Government or to advance a Government program or interest, and if the Government "provides or has provided any portion of the money or property requested or demanded," or "will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." *Id.*
- "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. §3729(b)(4).

There is no requirement in the FCA that a relator be an insider. The only requirement is that the relator bring forward "genuinely valuable information." *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009).

## C. The Public Disclosure Bar Does Not Apply

Defendants invoke the FCA's "public disclosure" provision, 31 U.S.C. §3730(e)(4). Defendants' Motion to Dismiss, pgs. 5–13. However, Defendants fail to carry their burden to show this affirmative defense applies here. *See United States ex rel. Sullivan v. Atrium Med. Corp.*, No. 13-cv-244, 2015 WL 13799759, at *11 n. 115 (W.D. Tex. June 15, 2015), *report and recommendation adopted*, 2015 WL 13799754 (W.D. Tex. July 30, 2015) (recognizing that after

2010 amendments to the FCA, the public disclosure bar is an affirmative defense).

Under § 3730(e)(4)(A), the FCA bars a relator's action only if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a specified public forum—such as a federal hearing, audit, or the "news media"—and the relator is not an "original source." 31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit uses a three-part test to determine if the public disclosure bar applies: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the *qui tam* action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is an 'original source' of the information." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017). "[C]ombining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021). "The key for determining whether allegations or transactions have been publicly disclosed is whether the critical elements of the fraudulent transaction were in the public domain." *Wibracht v. Travelers Cas. & Sur. Co. of Am.*, 731 F. Supp. 3d 761, 774 (E.D. Tex. 2024). There "must be a disclosure of fraudulent 'allegations or transactions' and not merely a disclosure of information" from one of the three specified channels. *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-00015, 2017 WL 9478501, at *8 (E.D. Va. Apr. 4, 2017).

1. <u>There was no Public Disclosure of "Substantially the Same" Allegations or Transactions Alleged in the Complaint</u>

Defendants argue the public disclosure bar applies here because the "Complaint is based upon transactions publicly disclosed in both federal government reports regarding PPP recipients." Defendants' Motion to Dismiss, pg. 8. However, the facts that Defendants argue were publicly disclosed are: 1) DNT was approved for a $8,421,129 PPP loan, 2) DNT reported 498 jobs on its

application for the PPP loan, and 3) DNT engaged in a $70 million private equity transaction with Alaris Royalty Corp. in 2015. *Id.* pgs. 9–10. Even if the sources of these three facts do fall within the scope of §§ 3730(e)(4)(A)(i)–(iii), Defendants overlook the fact that the Complaint is also ***crucially*** "based upon" additional facts, such as the fact that DNT employs over 500 people. Dkt. 1, ¶ 8. Defendants point to no purported public disclosure of that fact, therefore this Court should deny their motion to dismiss.

"[I]n order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." *Colquitt*, 858 F.3d at 374. "Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference: 'a misrepresented state of facts and a true state of facts.'" *Solomon*, 878 F.3d at 144 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 655 (D.C. Cir. 1994)). "The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud." *Id.*

Defendants do not satisfy this inquiry. Defendants argue that "'X' represents DNT applying for and receiving a PPP loan notwithstanding the fact that it purportedly had more than 500 employees and falsified its economic uncertainty, and 'Y' represents the prohibition on receiving PPP funds if the applicant had more than 500 employees and that the applicant certified in good faith that their loan request was necessary due to the prevailing economic uncertainty at the time of the application." Defendants' Motion to Dismiss, pg. 11. But this argument is utterly devoid of both a "misrepresented state of facts and a true state of facts." *Solomon*, 878 F.3d at 144. That is, none of Defendants' sources constitute the Y: that DNT has over 500 employees, and was therefore ineligible to receive any PPP funds.

Even if Defendants could point to an isolated source stating that DNT has over 500

employees, their assembled sources still would not be "public disclosures" for purposes of the FCA because no single source discloses "substantially the same allegations or transactions" as alleged in the Complaint. Indeed, neither PandemicOversight.gov, nor the Pro Publica article, nor any of the additional sources that Defendants have attached as exhibits to their Motion disclose a substantially similar allegation or transaction because ***none contain an allegation of fraud or wrongdoing***. With respect to a "transaction," no single identified source has ***both*** the "X" ***and*** the "Y" information necessary to infer that Defendants committed fraud without additional information from other sources.

For example, Defendants state that searching for "DNT Construction, LLC" on PandemicOversight.gov shows: 1) DNT was approved for a $8,421,129 PPP loan, 2) DNT reported 498 jobs on its application for the PPP loan, 3) who the lender was, 4) the loan was forgiven including the total amount of forgiveness with interest. Defendants' Motion to Dismiss, pg. 8. But this basic transactional information does not include a "misrepresented state of facts and a true state of facts." *Solomon*, 878 F.3d at 144. Nothing Defendants point to on PandemicOversight.gov constitutes the Y: that DNT had over 500 employees and was therefore ineligible to receive any funds (much less have them forgiven) from PPP. *See United States ex rel. Relator LLC v. Tennyson*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75, at 12 (C.D. Cal. Sep. 29, 2025) ("[T]he loan details on PandemicOversight.gov do not reveal facts from which a fraudulent transaction can be inferred."). The same analysis applies to the Pro Publica source and the sources regarding the 2015 $70 million private equity transaction—none contain ***both*** the "X" and "Y" information necessary to infer fraud.

Finally, Defendants fail to show any connection between the factual information disclosed on the PandemicOversight.gov and ProPublica.com websites and the information regarding the

2015 $70 million private equity transaction. That is, none of the factual information disclosed in any of the sources Defendants have identified "provide[s] 'specific details about the fraudulent scheme and the types of actors involved in it sufficient to set the government on the trail of the fraud.'" *Solomon*, 878 F.3d at 144 (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011)). Without these details, there would be no reason for the Government, or any interested reader, to conduct further, and materially different, research on Defendants' First Draw Loan. Because none of the disclosures Defendants have identified contain any information that would "set the government on the trail of the fraud," Defendants' attempt to invoke the public disclosure bar fails.

2. <u>Plaintiff is an Original Source</u>

Even if the Court disagrees with Plaintiff and finds that these sources are covered public disclosures, that would still not warrant dismissal because Plaintiff is an original source within the meaning of the FCA.[6] Among other things, the FCA defines an original source as one "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(2). Despite Defendants' insinuations to the contrary, a relator does not need to have been directly involved in the PPP loan application, or to have directly accessed other evidence, to qualify as an original source. This is because the FCA was amended to remove the word "direct" from the original source definition. *See, e.g.*, *Health Choice All., LLC, on behalf of United States v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *9 (E.D. Tex. July 25, 2018), *report and recommendation adopted*, 2018

[6] The Court should only consider if a relator is an "original source" if the Court finds there was a qualifying public disclosure. *See Schweizer*, 9 F.4th at 275.

WL 3802072 (E.D. Tex. Aug. 10, 2018) ("[A]fter the amendment, a relator no longer must possess 'direct . . . knowledge' of the fraud to qualify as an original source. The focus now is on what independent knowledge the relator has added to what was publicly disclosed.") (cleaned up); *United States ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166-DPW, 2014 WL 1271766, at *8 (D. Mass. Mar. 26, 2014) (same); *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 842 (E.D. Va. 2013) (same).

Moreover, although some of this information may be available online, it was found during the discovery process conducted by Plaintiff. This is Plaintiff's role as a relator: to investigate and uncover information that a lay person may overlook. Although anyone can hypothetically find this information online, one still needs to know what to look for and where to look for it. Information is not easily accessible without the time and skill to find it. Without those two things, the possibility of discovering such information decreases tremendously. Moreover, the information Plaintiff provided in the Complaint regarding DNT's annual receipts and increased revenue stream was the result of a lengthy investigation completed by Plaintiff. *See* Dkt. 1, ¶¶ 11; 15. Therefore, the issue of whether the public disclosure bar applies to this action should at the very least be left to a motion for summary judgment after the parties engage in discovery.

In sum, Defendants' attempt to invoke the public disclosure bar fails at every turn, and the Court should reject it.

**D. The Complaint Satisfies Rules 8(a) and 9(b)**

The Complaint adequately states an FCA claim as to all Defendants. The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729(a)(1)(A). The elements of an FCA claim are: (1) a false statement or fraudulent course of conduct; (2) made or carried out

with the requisite scienter; (3) that was material to the government's decision to pay or forgive a claim; and (4) caused the government to pay out funds. *See United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009). Defendants only address the first two elements in their Motion.

To survive a challenge under Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a challenge under Federal Rule 9(b), "a party alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting Fed. R. Civ. P. 9(b)). This means a plaintiff must "plead the 'who, what, when, where, and how' of the alleged fraud." *Colquitt*, 858 F.3d at 371. While fraud must be alleged with particularity, in the case of corporate defendants, this rule may be "relaxed" as to "information [that] is in the defendant's hands or control." *Burford v. Cargill, Inc.*, No. 05-cv-0283, 2011 WL 4382124, at *12 n. 7 (W.D. La. Sept. 20, 2011). In the context of the FCA, the Fifth Circuit has "explained that Rule 9(b) is 'context specific and flexible,' and noted that a plaintiff may sufficiently state a claim with particularity 'without including all the details of any single court-articulated standard—it depends on the elements of the claim in hand.'" *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892–93 (5th Cir. 2013) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189–90 (5th Cir. 2009)). A plaintiff may plead "with particularity the circumstances constituting fraud" for an FCA claim "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

Here, Plaintiff has alleged an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. Plaintiff has both exceeded Rule 9(b)'s requirements and pled enough has stated a claim that is not only possible, but also plausible. As such, Defendants' Motion should be denied.

***The Who***. Plaintiff alleges in its Complaint that Defendants (specifically DNT's CEO and President) knowingly submitted—or knowingly caused to be submitted—a false and fraudulent application to the SBA for a First Draw PPP loan. Dkt. 1, ¶¶ 50–61. As is detailed in the Complaint, DNT's CEO and President submitted that application during the start of the COVID-19 pandemic and after PPP was passed by the Congress and signed by the President and the rules for obtaining a PPP loan were published. Dkt. 1, ¶¶ 30–44; 50. Moreover, DNT's CEO and President knowingly submitted—or knowingly caused to be submitted—a false and fraudulent application for forgiveness on that PPP First Draw Loan, which effectively converted the PPP First Draw Loan into a Government grant to DNT. Dkt. 1, ¶¶ 62–63.

***The What, When, Where, and How***. Plaintiff's claims are based on several false certifications from Defendants' PPP loan and loan forgiveness applications. The Complaint alleges that the PPP loan application certifications included mandatory certifications by borrowers, *inter alia*, that (1) they were eligible for the loan amount; (2) the economic uncertainty made the loan necessary to support ongoing operations of the business; and (3) the loan proceeds were used for eligible expenses. Dkt. 1, ¶¶ 38–44. Borrowers also were warned as to the possibility of both civil and criminal charges for false certifications. Dkt. 1, ¶¶ 42; 48.

The Complaint alleges that on its loan application, DNT certified two things: 1) that it employed "no more than the greater of 500 employees" or 2) "the size standard in number of employees established the SBA in 13 C.F.R 121.201 for the Applicant's industry." Dkt. 1, ¶ 8. The

Complaint plausibly alleges that Defendants both falsified the headcounts at DNT in its PPP loan application to circumvent the 500-employee threshold in order to receive a loan, and that DNT was ineligible to receive a PPP loan because it was not a small business. Dkt. 1, ¶¶ 8–10; 50–51; 53. Additionally, the Complaint alleges that DNT knew it was not facing any "economic uncertainty [that made] the loan necessary to support ongoing operations of the business." Dkt. 1, ¶¶ 12; 56; 59. Individual defendants Duane McGlauflin and Dean Tomme were the DNT executives that authorized the submission of the false and fraudulent PPP First Draw loan application. Dkt. 1, ¶¶ 5; 7; 51.

1. Defendants Falsified the Headcount at DNT

The Complaint plausibly alleges that DNT had at least 700 employees and had an annual revenue of at least $114 million. Dkt. 1, ¶¶ 8; 11; 15. It is clear from the number of employees chosen by DNT, 498—two under the maximum number permissible to receive a PPP loan—that their fraudulent and falsified headcount was an effort to maximize the amount of PPP money they could receive. Dkt. 1, ¶¶ 6; 8; 10; 50. DNT also failed to disclose the number of employees of its parent company in its employee number calculation. Dkt. 1, ¶ 13.

2. The Complaint Alleges that DNT is not a Small Business

Plaintiff's Complaint details how the "SBA's size standard for businesses in Site Preparation Contractors (NAICS Code 238910) was $16.5 million as of the date DNT's loan was approved." Dkt. 1, ¶ 11. The Complaint also explains how, under the PPP and Cares Act, DNY's certification that 100% of the $8,421,129 loan was to be used for payroll equates to two and one-half (2.5) months of salaries, which would bring total annual salaries to $40,421,419. Dkt. 1, ¶ 11. Therefore, the Complaint explains, "unless DNT operated at [a] $30,421,419 loss when it applied for the loan, it had annual receipts in excess of the $16.5M size standard applicable for NAICS Code 238910." Dkt. 1, ¶ 11. Moreover, the Complaint alleges that DNT's annual revenues are at

least $114 million. Dkt. 1, ¶ 11. A company that grosses over $100 million in annual revenue can hardly be considered a small business. The Complaint therefore clearly alleges that DNT is not a small business.

3. The Complaint Alleges that DNT's Certification of Economic Uncertainty was False

The Complaint alleges that DNT certified on its loan application that "[c]urrent economic uncertainty makes this loan necessary to support the ongoing operations" of DNT. Dkt. 1, ¶¶ 12; 16. However, DNT in fact "did not and cannot show any decline in revenue during the pandemic, much less a decline so bad it threatened worker pay," and was "highly profitable during the pandemic." Dkt. 1, ¶¶ 12; 56.

4. The Complaint Alleges that DNT's Use of Proceeds Certification was False

Finally, the Complaint alleges that on its loan application, DNT certified the loan proceeds would be used for "only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." Dkt. 1, ¶¶ 40; 57–58. However, as explained above, DNT was prohibited from obtaining any PPP loans. Therefore, any expenditures using PPP loan money were not eligible expenses. Additionally, the Complaint alleges that this certification was false at the time it was made because DNT did not need Government support to retain workers, maintain payroll, or pay for other qualified expenses. Dkt. 1, ¶¶ 58–60. The Complaint also alleges that when seeking forgiveness of the PPP loan, Defendants falsely reported that they spent the loan proceeds on eligible expenses, making DNT's loan forgiveness application and certifications false. Dkt. 1, ¶¶ 18; 62.

To evade these discrepancies and fraudulent filings and distract from their wrongdoing, Defendants argue that Plaintiff is a "serial *qui tam* relator." Defendants' Motion to Dismiss, pgs. 6–7; 12–13. But the number of whistleblower cases brought by Plaintiff is irrelevant to the valid

and plausible claims Plaintiff has brought in this Action, and is merely a deflection away from the fact that the Complaint plausibly alleges that DNT falsified its headcounts and falsely certified it was facing economic uncertainty in its PPP loan application.

**E. The Complaint Adequately Alleges Scienter**

Rule 9(b) states that Defendants' state of mind "may be alleged generally," without specificity. Scienter under the FCA includes three states of mind, any of which is sufficient to find liability for "knowing" acts, including: (1) actual knowledge, (2) deliberate ignorance; or (3) reckless disregard. 31 U.S.C. § 3729(b)(1)(A). Moreover, the FCA "require[s] no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). As the Fifth Circuit has explained, "in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud.' Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384–85 (5th Cir. 2003) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (cleaned up).

The Complaint alleges that Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment to the Government. Dkt. 1, ¶¶ 7–19; 50–60. The Complaint also alleges "specific facts that support an inference of fraud." *Willard*, 336 F.3d at 385. These facts include, for example, (1) that Defendants knew and understood applicable requirements to receive PPP loans, (2) Defendants falsely represented that their certifications were accurate, (3) Defendants falsely stated that they were eligible for the loan, and (4) Defendants knew inaccurate information would leave them exposed to civil and criminal penalties. Dkt. 1, ¶¶ 7–19; 42; 48; 50–60. Notwithstanding these mis(representations), as described above, Defendants well-knew they were ineligible for a loan

because DNT had over 500 employees at the time of filing the application, was not a small business, and did not face economic uncertainty. DNT could not and should not take government loan money without a thorough review of its legality. Dkt. 1, ¶¶ 38–49. With respect to DNT's CEO and President, sophisticated business executives responsible for effectively operating DNT, recklessness, at a minimum, is met. Dkt. 1, ¶¶ 51–52. Making such certifications without proper investigation at the very least demonstrates reckless disregard for the truth. *See, e.g.*, *United States v. Vista Hospice Care, Inc.*, No. 3:07-cv-604-M, 2012 WL 12886423, at *4–5 (N.D. Tex. July 23, 2012) (holding that allegations of certification for hospice care without an examination was sufficient to allege scienter in FCA case); *Grubbs*, 565 F.3d at 190 (denying motion to dismiss an FCA claim where there was "reliable indicia that lead[s] to a strong inference that [false] claims were actually submitted"); *United States ex rel. Capshaw v. White*, No. 3:12-CV-4457-N, 2018 WL 6068806, at *3 (N.D. Tex. Nov. 20, 2018) (relying on a plausible inference to conclude that the defendant "acted in either deliberate ignorance or reckless disregard that his certifications of lawfulness were false").

In sum, the Complaint adequately alleges that Defendants knowingly made false statements to obtain the $8,421,129 PPP loan. Such allegations are sufficient to survive a motion to dismiss. *See, e.g., United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F. 4th 395, 407–08 (5th Cir. 2025) (holding FCA's scienter requirement applies only to falsity element and does not apply to materiality element of FCA claims). The pleading standard should be relaxed here where Defendants include a corporate entity and its officers who are in unique possession of certain facts including their full PPP loan application and forgiveness materials and can more easily conceal fraud. *See Burford*, 2011 WL 4382124, at *12 n. 7.

**F. Any Dismissal Should be with Leave to Amend**

For the reasons above, the Court should deny Defendants' Motion in its entirety. However, should the Court find any pleading defect, it should grant Plaintiff leave to amend its Complaint. Rule 15 requires that leave to amend "shall be freely given," and the Fifth Circuit has emphasized that "[l]eave to amend should be liberally granted." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024). Further, "prejudice is the touchstone of the inquiry under rule 15(a)," *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (cleaned up), and Defendants make no such showing in their motion.

## V. CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint. To the extent this Court disagrees, Plaintiff respectfully requests an opportunity to amend to cure any deficiency.

DATED: October 6, 2025

/s/ *Kristen L. Nelson*
Kristen L. Nelson (Bar No. 24094867)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

Charles F. Dender (*pro hac vice* forthcoming)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

**CERTIFICATE OF SERVICE**

I, Kristen L. Nelson, hereby certify that on October 6, 2025, I served a true and correct copy of the foregoing document to counsel of record for Defendants via CM/ECF.

*/s/ Kristen L. Nelson*
Kristen L. Nelson